ROY NOBLE LEE, Chief Justice,
dissenting:
The matter is before the Court on the Petition of Paul H. “Bud” Holmes for rein *853 statement to the practice of law pursuant to Rule 12 of the Rules of Discipline of the Mississippi Bar. Holmes was disbarred on April 12, 1986, by a Complaint Tribunal of the Bar. The disbarment was based on Holmes’ plea of guilty to a contempt of court charge, a crime involving fraud, dishonesty, misrepresentation and deceit under Rule 6(a) of the Bar’s Rules of Discipline. This Court found that the offense warranted disbarment and affirmed the Tribunal’s judgment of disbarment on December 3, 1986. Holmes v. Mississippi State Bar Association, 498 So.2d 837 (Miss.1986).
The petition for reinstatement was filed on June 27, 1990, more than three years after the order of disbarment as required by Rule 12.1 and addresses each of the areas of content required by Rule 12.7. Rule 12.7 provides:
All reinstatement petitions shall be addressed to the Court, shall state the cause or causes for suspension or disbarment, give the names and current addresses of all persons, parties, firms or legal entities who suffered pecuniary loss due to the improper conduct, the making of full amends and restitution, the reasons justifying reinstatement, and requisite moral character and legal learning to be reinstated to the privilege of practicing law. Upon filing, the petition shall be served on, and an investigatory fee of $500.00 shall be paid to the Bar, same to be in addition to any other sum due the Bar, or persons injured by the petitioner’s improper conduct. The matters set out in this paragraph shall be jurisdictional.
Rule 12.7, Rules of Discipline.
In response to this requirement of the Rule, Holmes’ petition alleges that:
(1) he was disbarred for pleading guilty to a violation of 18 U.S.C. § 401(1);
(2) there were no persons or entities who suffered pecuniary loss due to Holmes’ conduct;
(3) the nature of the offense required no amends or restitution;
(4)there are two major reasons justifying reinstatement (a) the nature of the offense committed, and (b) his conduct since the offense.
Holmes’ petition urges this Court to consider the circumstances surrounding his plea to the charge of contempt which led to his disbarment:
Petitioner was not the target of a federal investigation but was only a witness. The investigation involved a longtime friend and member of the Federal Judiciary. Petitioner was reluctant to volunteer any information which would be harmful to his friend. He was subsequently indicted on five (5) felony counts. Petitioner and his attorneys did not believe that petitioner was guilty of any of the felony charges. However, on the second day of trial, after jury selection had been completed, the prosecution approached defense counsel and proposed a plea bargain which would drop all felony charges and result in a plea to one (1) misdemeanor. Petitioner and his counsel stated that plaintiff would not plea [sic] to even a misdemeanor charge unless it was such that would not result in disbarment. It was upon this condition that the prosecution proposed a plea to the misdemeanor charge of contempt. Petitioner fully recognizes that neither the Mississippi State Bar nor the Mississippi Supreme Court was in any way bound by the agreement and understanding of petitioner with the Federal prosecutor and recites this fact merely to establish the background of the offense charged.
Having offered the circumstances of his conviction as a reason for reinstatement, Holmes’ petition states that he does not “challenge his disbarment,” that he “acknowledges the error and wrong he committed before the Federal Grand Jury,” and that he has “sought to conduct himself in such a manner as to atone for his mistake and to be eligible for reinstatement to the practice of law.”
As to his second reason justifying his reinstatement — his conduct since the offense for which he was disbarred — Holmes points out that he was a cooperative witness in the investigation in connection with *854 the impeachment of U.S. District Judge Walter L. Nixon, Jr.; that he has been involved in a number of successful businesses which include serving as agent for professional athletes and the restructuring of a major food and entertainment company; that he sponsored a major charitable event supporting the Cystic Fibrosis Foundation; that he was elected to serve as a member of the Halas-Payton Foundation supporting civic and charitable endeavors in the Chicago area; and that he has supported his church, the University of Southern Mississippi, and the law enforcement agencies of Forrest County, Mississippi. These activities constitute the evidence offered by Holmes as required by Rule 12.7 to show that he has the requisite moral character to be reinstated to the privilege of practicing law. In support of his contention he also offers expressions of opinion by members of the Mississippi Bar, the South Central Bar Association, and the Mississippi Trial Lawyers Association that he possesses the requisite moral character and legal learning to practice law in the State of Mississippi. Attached to Holmes’ petition is a letter from his former pastor who offered the opinion that Holmes “had expressed a deep remorse as to mistakes that had been made” and that Holmes “has the desire, gifts and experience to be of effective service to society through the practice of law.”
As to the Rule 12.7 requirement that the reinstatement petition show that the petitioner demonstrate the requisite legal learning to be reinstated to the practice of law, Holmes states that he has continued to read advance sheets of state and federal cases and has attended several continuing legal education seminars.
In its response in opposition to Holmes’ petition, the Bar agrees with Holmes that there were no parties who suffered pecuniary loss due to Holmes’ conduct and that no amends or restitution were due. The Bar contends, however, that Holmes’ petition for reinstatement should be denied because he failed to demonstrate the requisite moral character for reinstatement to the practice of law.
When an attorney, who has been prohibited from practicing law seeks reinstatement, he has the burden of proving to this Court that he has the requisite moral character for reinstatement to the practice of law. Haimes v. Mississippi State Bar, 551 So.2d 910, 912 (Miss.1989); Burgin v. Mississippi State Bar, 453 So.2d 689, 691 (Miss.1984). When that prohibition has taken the form of disbarment, the attorney seeking reinstatement has the greatest burden which this Court imposes for reinstatement:
A suspended attorney petitioning for reinstatement has the burden of proving his case, but the case he must prove is not the same or as great as that demanded of one who has been disbarred. Implicit in the judgment of suspension, stopping short of disbarment, is that the attorney’s character has not been shown so deficient that proof of general moral and professional rehabilitation be required.
Haimes v. Miss. State Bar, (emphasis added). The principal question in deciding whether or not to restore a disbarred attorney to practice is “whether that particular attorney would be safe to assist in administering justice, if readmitted.” Phillips v. Mississippi State Bar, 427 So.2d 1380, 1382 (Miss.1983) quoting Ex Parte Marshall, 165 Miss. 523, 556, 147 So. 791, 798 (1933). The Phillips Court, again quoting Ex Parte Marshall, said that all that is required to show a rehabilitated character is: “[a] firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed.” Phillips v. Mississippi State Bar, 427 So.2d 1380, 1382 (1933) (emphasis added) quoting Ex Parte Marshall, 165 Miss. 523, 556, 147 So. 791, 798 (1933).
Holmes has appended to his petition statements that he “has the requisite moral character and legal learning to practice” signed by members of the Bar. While the lawyers expressing their opinion may have had an evidentiary basis for their conclusions, their petitions contain no particularized evidence on which the conclusions were based.
Despite Holmes’ assertions that he is prospering financially in a number of business ventures, has been involved in some *855 civic and charitable fund raising, and has attempted to avoid the appearance of impropriety, Holmes’ petition for reinstatement has not met the burden of proving that he has remedied the defect in his character which led to his conviction for contempt.[1]
In my opinion, Holmes has not provided us with the outward manifestation to convince a reasonable mind that he has reformed and would be “safe to assist in administering justice.” Phillips v. Mississippi State Bar, 427 So.2d 1380, 1382 (Miss.1983).
Because of my opinion that Holmes has failed to meet the burden of proof for reinstatement, I think that his petition for reinstatement should be denied.
HAWKINS, P.J. and PRATHER, J. join this dissent.

. While in the process of trying to assess whether or not Holmes has rehabilitated his character for truthfulness, the Court was advised of the following pending civil suits in which Mr. Holmes and/or his business venture(s) were made defendants):
1) Paris J. Theriot, II, Martha Theriot Martorello and Rebecca Lynn Theriot v. Blue Streak Offshore, Inc., Paul R. (Bud) Holmes, Dennis L. Good, Cyril Hentze and Jimmie Scarboro, civil action 90-4195 filed on October 22, 1990 in U.S. District Court in the Eastern District of Louisiana. The complaint alleges that Holmes was part of a plan to fraudulently transfer the assets (ships) of Blue Streak Marine, Inc. to Blue Streak Offshore, Inc., a company organized originally (with Holmes as sole shareholder) to market and operate the vessels owned by Blue Streak Industries, Inc.
2) Blue Streak Offshore, Inc. v. Blue Goose Charters, Inc., suit on a promissory note filed on June 29, 1990 in the 22nd Judicial District Court of Louisiana for the Parish of St. Tammany. The complaint alleges that the Blue Goose Charters executed a promissory note in the amount of $52,500.00 in connection with the purchase of the vessel, Blue Goose, and that no installments had been paid on the note. Attached to the complaint is a promissory note purportedly signed by Paul Holmes as President of Blue Goose Charters, Inc.
3) First National Bank of Jefferson Parish v. Blue Streak Offshore, Inc., suit seeking judgment of $40,986.91 from Blue Streak Offshore filed in the 24th Judicial District Court of Louisiana for the Parish of Jefferson. The complaint alleges that, as security for a note to Blue Streak Industries, Inc., Blue Streak, Offshore, Inc. assigned and pledged its accounts receivable arising from the operation of certain vessels and that it failed to remit amounts received from Chevron USA.
4) Joseph Krawiec, Eugene Roberts, Jesse Carroll, Carl Sentell, Jr. and Dennis Good v. Blue Streak Offshore, Inc., a maritime claim filed in the 24th Judicial Court for the Parish of Jefferson by persons claiming that they were employed by Blue Streak Marine, Inc., aboard a barge named “Blue Streak 11" and suffered damages when the defendant corporation informed the U.S. Coast Guard that the vessel was "improperly manned” and that it had been "hijacked.”
5) Blue Goose Charters, Inc. and Dennis L. Good v. Paul H. "Bud" Holmes, Connie Babin, and Blue Streak Offshore, Inc., Cause # 35-040 in the 25th Judicial District Court for the Parish of Plaquemines, Louisiana. The complaint alleges fraud and breach of fiduciary duty on the part of Holmes, Babin, and Offshore.
6) Dan McDonald and Beverly Ryall, Trustees of and for Dr. Prentiss E. Smith, Inc., Money Purchase Pension Plan, Southeastern Health Care, Inc. and Dr. Prentiss E. Smith v. Paul H. Holmes, 595 So.2d 434 (Miss.1992), (Sup.Ct. reversed the grant of summary judgment for Holmes and remanded the case for trial of suit involving business dealings between the parties over a number of years).