798 So.2d 476 (2001)
Jimmy D. McGUIRE
v.
THE MISSISSIPPI BAR.
No. 2000-BR-01097-SCT.
Supreme Court of Mississippi.
June 21, 2001.
*477 Jimmy D. McGuire, pro se.
Michael B. Martz, Jackson, Attorney for Appellee.
EN BANC.
MILLS, Justice, for the Court:
¶ 1. On May 15, 1997, this Court entered an order disbarring Jimmy D. McGuire from membership in The Mississippi Bar and revoking his license to practice law in the State of Mississippi. Mississippi Bar v. McGuire, 694 So.2d 674 (Miss.1997); see also Mississippi Bar v. McGuire, 647 So.2d 706 (Miss.1994). Our decision was based upon McGuire's felony conviction in the United States District Court for the Southern District of Mississippi for filing a false currency reporting form as required by the IRS. See United States v. McGuire, 99 F.3d 671 (5th Cir.1996) (en banc), cert. denied, 520 U.S. 1251, 117 S.Ct. 2407, 138 L.Ed.2d 174 (1997). McGuire was taped conspiring with purported drug trafficking clients (who were actually undercover agents) to accept cash payments in a manner shielding the source and purpose of the cash in violation of federal law. In the process he advised these purported drug dealers of routes of travel that they could use to avoid detection in their drug trafficking. Though McGuire was acquitted on other counts, he received the maximum sentence because he was involved in other money laundering schemes and he attempted to obstruct justice in his trial.
¶ 2. McGuire now petitions this Court, seeking reinstatement to the practice of law. The Bar does not take a position concerning McGuire's Petition for Reinstatement to membership in the Bar and the reissuance of his license to practice law in this State except as is required by Rule 12, Mississippi Rules of Discipline.

*478 DISCUSSION

¶ 3. Reinstatement to the practice of law is governed by Rule 12 of the Mississippi Rules of Discipline. In re Petition of Robb, 702 So.2d 423, 424 (Miss.1997). Rule 12.7 specifically describes the jurisdictional requirements of reinstatement petitions as follows:
All reinstatement petitions shall be addressed to the Court, shall state the cause or causes for suspension or disbarment, give the names and current addresses of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct, the making of full amends and restitution, the reasons justifying reinstatement, and requisite moral character and legal learning to be reinstated to the privilege of practicing law. Upon filing, the petition shall be served on, and an investigatory fee of $500.00 shall be paid to the Bar, same to be in addition to any other sum due the Bar, or persons injured by the petitioner's improper conduct. The matters set out in this paragraph shall be jurisdictional.
¶ 4. "The Court's fundamental inquiry is whether [the attorney] has rehabilitated himself in conduct and character since the suspension was imposed." In re Mathes, 653 So.2d 928, 929 (Miss.1995). "A firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed is only required." Williams v. Mississippi State Bar Ass'n, 492 So.2d 578, 580 (Miss.1986).
¶ 5. McGuire fails to satisfy this Court that he has effectively rehabilitated himself "to the point that he should enjoy a license to practice law." In re Reinstatement of Massey, 722 So.2d 452, 453 (Miss.1998) (hereinafter Massey III). For this reason, his petition for reinstatement is denied.
¶ 6. The Bar deposed McGuire on July 25, 2000, as part of its investigation of McGuire's Petition for Reinstatement. McGuire voluntarily submitted to the deposition. He provided the Bar with only one letter of recommendation in support of his petition for reinstatement at the time he was deposed. Since that time, however, McGuire has provided this Court with thirty personal letters of recommendation.
¶ 7. Since his release from prison, McGuire has not been engaged in any type of community service activities, but he does attend United Methodist Church on a regular basis. Rule 11(c) of the Mississippi Rules of Discipline provides that a suspended attorney shall perform certain acts including:
(1) notify all clients of his disbarment, suspension or resignation and his consequent inability to act as an attorney after the effective date of his disbarment, suspension or resignation; (2) notify each client involved in pending litigation or administrative proceedings and the attorney or attorneys for each adverse party in such proceedings, of his disbarment, suspension or resignation and consequent inability to act as an attorney after the effective date of his disbarment, suspension, or resignation; (3) advise each client promptly to substitute another attorney or attorneys in his place or to seek legal advice elsewhere; and (4) notify all elected courts and agencies of his disbarment, suspension, and consequent inability to act as an attorney after the effective date thereof; and (5) give such other notice as the disciplinary agency last having jurisdiction may direct in the public interest.
Upon being questioned by the Bar, McGuire indicated that he was not aware of the requirement of notifying all courts, agencies, and clients of his disbarment, *479 and notifying his clients to retain alternate counsel. However, McGuire asserts in his response that at the time of his disbarment he had no clients to notify as he had been in the federal prison camp in Talledega, Alabama, for nearly six months. McGuire also testified that although he did not notify opposing counsel and courts of his disbarment and felony conviction, it was well known throughout the community.
¶ 8. Some of the letters in support of McGuire's reinstatement express chagrin over his "harsh" treatment for failing to properly fill out an "IRS Form." The tenor of the letters indicates that the writers are not aware of the serious nature of McGuire's offenses. He violated far more serious laws than failing to properly fill out an IRS form. In a letter to the Mississippi Bar, Assistant U.S. Attorney Ruth Morgan provided the following information:
In his petition for reinstatement, Mr. McGuire mis-characterizes the basis for his conviction as a simple mistake on a form. In reality, the facts proved at trial showed that he devised an intricate money laundering scheme with people he thought were cocaine dealers (who were actually undercover agents).... [T]he 5th Circuit panel observed "[the information generating the [undercover] investigation was well-documented at trial. Several ex-clients testified that McGuire routinely required large cash payments in the tens of thousands of dollars and refused to give receipts. Other individuals offered testimony about large amounts of cash observed in McGuire's home and about large purchases made with cash."
* * *
In devising the money laundering scheme, Mr. McGuire advised the undercover agents, who were posing as his clients, to lie about where the money came from, and he even suggested ideas for the lies they could tell the police and the government about where they got the money. He also told them which highways to avoid traveling on to avoid being stopped by the police while they were hauling drugs or drug money.
¶ 9. United States District Judge David Bramlette stated the following to McGuire at the sentencing hearing:
The responses that you made, Mr. McGuire, that I have just read, show clearly to me that you understood the agent's comments, to me, that the currency came from drug trafficking activity. And the undercover agents' language was unambiguous in relating to you that the $20,000 was illicit. And your responses were equally unambiguous in indicating that you understood the true ownership of the money had to be concealed from the IRS, and you devised a scheme, a thinly veiled scheme I might say, to accomplish that purpose, in bringing in another man whose name would appear and in fact did appear on the form.
The district court further found that McGuire used his position as an attorney to facilitate his crime. The judge stated:
Now, in this case, Mr. McGuire in my opinion used his special skills in several ways. First, he used the attorney-client privilege to talk confidentially with the undercover agents about how to hide the information from the government. He advised them on how to avoid detection by the police on the highways, having gained that information from your work as a defense counsel having represented many people involved in drug trafficking before, according to the record. You told them that you would keep all information on Mr. Flores and Mr. Martinez completely separate from the cash fees you received from them. And in fact, it's my recollection that you set up two separate files involving [sic] one on Flores and one on Bolivar who was the man that was brought in under the ruse, *480 that is, under the pretense of being a person who was going to be paying the fee or the money. And you did that so that there would be no connection between these two in your office files, and that Martinez and Flores would not be connected to the $20,000. Mr. McGuire assured the agents that everything they told him was confidential, and then you used the attorney-client privilege to advise them to come up with false reasons for why they were carrying a large sum of cash.
¶ 10. The court found that McGuire's conduct in connection with the acquitted counts justified an upward departure in the sentencing guidelines. The court imposed the statutory maximum of 36 months imprisonment and a $50,000 fine.
¶ 11. It is our view that this case falls somewhere between Parsons, who was convicted after a plea bargain of attempting to launder drug money and Massey, who was convicted of trafficking in drugs. Compare In re Petition of Parsons, 797 So.2d 203 (Miss.2000), with Massey III, 722 So.2d 452 (Miss.1998), and Massey II, 670 So.2d 843 (Miss.1996). In Parsons we allowed reinstatement; in Massey we did not.
¶ 12. We find that McGuire has not demonstrated the requisite rehabilitation in conduct and moral character since his disbarment to allow his reinstatement. Therefore, we deny his petition.
¶ 13. This Court stated the following in Massey III:
The legal profession has come a long way from the days when attorneys were automatically presumed honorable. The quality and reputation of the Mississippi Bar and the public interest which it serves warrant stringent standards for reinstatement following disbarment. This Court remains firm in its resolve that one who has acted in a manner sufficiently egregious to warrant disbarment must clearly show a rehabilitation of character before reinstatement to the privilege of practicing law. Compromise of the standards to which attorneys are held will surely cripple the profession, with concomitant harm to the public.
Massey III, 722 So.2d at 453 (quoting In re Reinstatement of Tucker, 656 So.2d 799, 804 (Miss.1995)).
¶ 14. While McGuire's crime does not quite rise to the level of Massey's, it certainly comes close. We cannot forgive such egregious behavior so lightly and ignore public trust and confidence in the legal profession by granting pro forma reinstatement. McGuire has performed no acts of community service, has not fully admitted the consequences of his failings as an attorney, and has done little if anything to convince us that he has a "firm resolve to live a correct life." Williams, 492 So.2d at 580.

CONCLUSION
¶ 15. McGuire carries the ultimate burden of proving his worthiness for reinstatement to the practice of law. Having reviewed McGuire's petition, the Bar's answer, and McGuire's response, it is the opinion of this Court that McGuire has not met his burden and has failed to satisfy the requirements of Rule 12 and the requirements for reinstatement as set forth by this Court. Therefore, his petition is denied.
¶ 16. PETITION FOR REINSTATEMENT DENIED.
PITTMAN, C.J., BANKS and McRAE, P.JJ., SMITH, WALLER, COBB and DIAZ, JJ., CONCUR.
EASLEY, J., dissents without separate written opinion.